

# In the Missouri Court of Appeals
## Eastern District

### DIVISION THREE

| | | |
|---|---|---|
| GERALD PARSONS, | ) | No. ED106367 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court of |
| | ) | Jefferson County |
| vs. | ) | 16JE-CC00715 |
| | ) | |
| STATE OF MISSOURI, | ) | Honorable Troy A. Cardona |
| | ) | |
| Respondent. | ) | Filed: May 14, 2019 |

### OPINION

This post-conviction-relief case arose out of an incident in which Gerald Parsons, while intoxicated, crashed his vehicle into a stationary police vehicle injuring the officer inside. Parsons was charged with driving while intoxicated (DWI) and second-degree assault of a law enforcement officer, both class B felonies which carried punishment ranges of five to 15 years in prison. After plea negotiations failed, Parsons entered blind guilty pleas to both charges and received concurrent sentences of 12 years on each conviction. Later, it was determined that the DWI charge was an included offense of the assault charge and, therefore, the guilty plea on the DWI charge violated Parsons's constitutional right against double jeopardy. Parsons was permitted to withdraw his guilty plea to the DWI charge and that charge was dismissed, but his guilty plea and 12-year sentence on the assault charge remained in place.

Parsons now appeals the denial following an evidentiary hearing of his Rule 24.035[1] motion for post-conviction relief based on allegations of ineffective assistance of counsel. He contends that the motion court clearly erred when it found he was not prejudiced by his counsel's failure to recognize the double jeopardy situation presented by the two charges and counsel's advice that he plead guilty to both charges.

We find that the motion court clearly erred when it found that Parsons was not prejudiced by counsel's error. Therefore, we reverse and remand.

## Background

*1. Parsons's guilty pleas and counsel's discovery of the double jeopardy issue.*

Under § 558.011.1(2)[2], second-degree assault of a law enforcement officer and driving while intoxicated each carry a sentence range of between five and 15 years in prison. During the plea bargain negotiations in this case, the State offered to recommend sentences of 11 years on each charge in exchange for Parsons's guilty pleas.[3] Parsons rejected the offer. Then, on February 25, 2016, he entered blind guilty pleas to the two charges.[4] On April 20, 2016, the court accepted his pleas and sentenced him to 12 years on each conviction and ordered the sentences to run concurrently.

Parsons's counsel then discovered that the DWI charge was an included offense since driving while intoxicated was one of the elements of the assault charge. As a result, the guilty

---

[1] All rules references are to the Missouri Supreme Court Rules (2018).
[2] All statutory references are to RSMo Cum. Supp. 2014.
[3] The record is silent on whether the State's offer was for concurrent or consecutive sentences but the parties on appeal appear to agree that the offer was for concurrent sentences.
[4] A blind guilty plea is one in which the defendant pleads guilty without any agreement with the prosecutor or court as to the sentence and with an understanding that the court could impose any sentence within the authorized range of punishment. *Stanley v. State*, 490 S.W.3d 389, 391 n.1 (Mo.App.E.D. 2016).

pleas and convictions subjected Parsons to multiple punishments for the same offense in violation of his constitutional right to be free from double jeopardy, which Parsons never waived.[5] The plea court and the State were also apparently unaware of this defect in the plea negotiations and the court's sentences.

On May 5, 2016, counsel filed a motion to withdraw Parsons's guilty plea to the DWI charge to which the State consented and on May 19, 2016, the court set aside that guilty plea. The State also filed a *nolle prosequi* as to the DWI charge.

Parsons's counsel did not advise him that he should seek also to withdraw his guilty plea to the assault charge. In fact, counsel stated at the evidentiary hearing that after realizing his error with respect to the double jeopardy issue, he told Parsons it was best not to seek re-sentencing on the assault charge because he feared that if Parsons requested a lesser sentence, the plea court might be inclined to give him a greater one.

---

[5] An individual's right to be free from double jeopardy derives from the Fifth Amendment to the United States Constitution. This right was made applicable to the states through the Fourteenth Amendment. *State v. Horton*, 325 S.W.3d 474, 477 (Mo.App.E.D. 2010). Beyond protecting defendants from subsequent prosecutions for the same offense after an acquittal or a conviction, the Fifth Amendment also prohibits multiple punishments for the same offense. *Id.* at 477-78 (citing *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794, 798–803 (1989)).

When there is an allegation of multiple punishments for one offense, the question is whether cumulative punishment was intended by the legislature. *Id.* at 478 (citing *State v. McTush*, 827 S.W.2d 184, 186 (Mo.banc 1992). If the legislature specifically authorizes cumulative punishment under two statutes that prohibit the same conduct, the court may impose multiple punishments without violating the double jeopardy clause. *Id.* (citing *McTush*, 827 S.W.2d at 186). Here, the legislature clearly did not authorize multiple punishments for the criminal conduct at issue, because § 556.041 provides that a person may not be convicted of more than one offense for the same conduct if one offense is included in the other, and there is no dispute that the charges in this case fall under § 556.046's definition of included offenses.

3

## 2. *Parsons's Rule 24.035 motion for post-conviction relief and evidentiary hearing.*

Parsons then filed his Rule 24.035 motion seeking relief from the assault conviction and its 12-year prison sentence. He asserted multiple claims of prejudicial ineffective assistance of counsel,[6] including that counsel's erroneous advice caused him to plead guilty to the assault charge unknowingly and involuntarily and that had counsel correctly advised him that he legally faced only the assault charge and its 15-year maximum sentence—not both the assault charge *and* the DWI charge with its additional 15 years—he would have gone to trial.

At the evidentiary hearing, Parsons testified that at the time he entered his blind guilty pleas, he believed he "did not really have any options" except to plead guilty, because he thought he could be sentenced up to a maximum of 30 years in prison. Plea counsel testified that before he discovered his error, he advised Parsons that he had a "very difficult case" for trial; that consecutive sentences were "a possibility"; and that, therefore, he could face up to 30 years on the charges.[7] Parsons testified, however, that had he known he faced only the assault charge and its

---

[6] In addition to his claim on review here, Parsons asserted that counsel was deficient for failing to advise him to seek the withdrawal of his guilty plea to the second-degree assault charge. The motion court found that Parsons had no right to seek relief for this additional claim of ineffective assistance because according to the court, after Parsons was sentenced on April 20, 2016, counsel was acting as post-conviction counsel, and Missouri courts recognize no right to the effective assistance of post-conviction counsel. *See Martin v. State*, 386 S.W.3d 179, 186 (Mo.App.E.D. 2012) (citing "Missouri's longstanding principle that a petitioner does not have a constitutional right to the effective assistance of post-conviction counsel").

Although Parsons failed to raise this issue here, we note that no authority in Missouri law supports the conclusion that counsel was acting as post-conviction counsel the entire time he had an opportunity to file a motion to withdraw Parsons's guilty plea to the second-degree assault charge. Rule 29.07(d) provides that a motion to withdraw a guilty plea may be made at the earliest *before sentence is imposed*, and here counsel had more than 20 days after Parsons entered his guilty pleas to file a motion to withdraw them before sentencing. Moreover, Rule 29.07(d) sets forth that to correct manifest injustice the court *after sentence* may set aside the judgment of conviction and permit the defendant to withdraw his plea, and no authority holds that only "post-conviction counsel" may seek withdrawal after sentencing.

[7] We acknowledge that counsel testified at a different point that his and Parsons's perspective "was never that [there] was a legitimate threat for [Parsons's sentences] to run consecutively." At first

4

15-year maximum sentence, he would not have pleaded guilty and would have insisted on going to trial.

The motion court—notably, the same judge as in the plea court—found that Parsons's counsel was "deficient in failing to object to the imposition of sentence on both charges." But the motion court found that Parsons was not prejudiced by counsel's error because the plea court set aside Parsons's DWI guilty plea and conviction. The motion court also found that Parsons's remaining guilty plea, to the second-degree assault charge, was entered knowingly and voluntarily, despite the fact that Parsons had entered it based on misinformation about the double jeopardy consequences and thus as a result of a fundamentally-flawed plea bargaining process.

This appeal follows.

## Standard of Review

*1.  The two-part* Strickland *test for ineffective assistance of counsel under Rule 24.035.*

We review the denial of a Rule 24.035 motion for post-conviction relief only to determine whether the motion court's findings and conclusions are clearly erroneous. Rule 24.035(k); *Dorsey v. State*, 448 S.W.3d 276, 282 (Mo.banc 2014). Findings and conclusions are clearly erroneous only if, after reviewing the entire record, we are left with the definite and firm impression that a mistake has been made. *Swallow v. State*, 398 S.W.3d 1, 3 (Mo.banc 2013). We presume that the motion court's findings are correct. *Chaney v. State*, 323 S.W.3d 836, 841 (Mo.App.E.D. 2010).

---

glance, this may seem to conflict with counsel's testimony that consecutive sentences were "a possibility." Nevertheless, the two statements may be reconciled. The record shows that counsel appraised what was a "legitimate threat" in referring to the anticipated consequences of Parsons *pleading guilty*, as opposed to in describing—as counsel did at other points during the hearing— the possible consequences of Parsons *going to trial* and being convicted of both of the charges.

Parsons's burden of proof is established by *Strickland's* two-prong test for determining ineffective-assistance-of-counsel claims in post-conviction-relief cases. *Johnson v. State*, 406 S.W.3d at 898 (Mo.banc 2013) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To be entitled to relief, the movant must show by a preponderance of the evidence that (1) his counsel failed to exercise the level of skill and diligence that a reasonably competent counsel would in a similar situation, and (2) he was prejudiced by that failure. *Id.* at 898-99.

2. *Parsons's burden with respect to the prejudice prong of the* Strickland *test.*

There is extensive jurisprudence, specific to the guilty plea context, addressing the movant's burden of proof with respect to the prejudice prong of the *Strickland* test. *See, e.g., Lee v. United States*, 137 S.Ct. 1958, 1965 (2017); *Missouri v. Frye*, 566 U.S. 134, 147 (2012); *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Webb v. State*, 334 S.W.3d 126, 128 (Mo.banc 2011); *Dobbins v. State*, 187 S.W.3d 865, 867 (Mo.banc 2006). In *Lee*, the Supreme Court of the United States recited the standard we find to be applicable in this case: "When a defendant claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea, the defendant can show prejudice by demonstrating a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." 137 S.Ct. at 1965 (citing *Hill*, 474 U.S. at 59).

The Court in *Lee* drew an important distinction between ineffective assistance that occurs during a *trial* and ineffective assistance that occurs during *plea negotiations*. *Id.* at 1964–5. A claim of ineffective assistance of counsel will often involve a claim of attorney error "during the course of a legal proceeding"—for example, that counsel failed to raise an objection at trial or to present an argument on appeal. *Id.* at 1964 (citing *Roe v. Flores–Ortega*, 528 U.S. 470, 481 (2000)). A defendant raising such a claim can demonstrate prejudice by showing "a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Flores-Ortega*, 528 U.S. at 482 (quoting *Strickland*, 466 U.S. at 694) (internal quotation marks omitted).

But a claim of ineffective assistance in *plea negotiations* amounts, by contrast, to an averment that counsel's "deficient performance arguably led not to a judicial proceeding of disputed reliability, but rather to the *forfeiture of a proceeding* itself." *Lee*, 137 S.Ct. at 1965 (quoting *Flores–Ortega*, 528 U.S. at 483) (emphasis added). When a defendant alleges his counsel's deficient performance led him to accept a guilty plea rather than go to trial, we do not ask whether, had he gone to trial, the *result* of that trial *would have been different* than the result of the plea bargain. *Id.* That is because, while we ordinarily "apply a strong presumption of reliability to judicial proceedings," "we cannot accord" any such presumption "to judicial proceedings that never took place." *Id.* (quoting *Flores-Ortega*, 528 U.S. at 482–483) (internal quotation marks omitted). We instead consider whether the defendant was prejudiced by the "denial of the entire judicial proceeding . . . *to which he had a right.*" *Id.* (citing *Flores-Ortega*, 528 U.S. at 483) (emphasis added).

### 3. The role plea bargaining plays in our criminal justice system.

The Missouri Supreme Court in *Taylor v. State*, 497 S.W.3d 342, 349 (Mo.App.W.D. 2016) observed that plea bargain negotiations represent a critical phase of litigation for purposes of the Sixth Amendment right to the effective assistance of counsel. *See also Padilla v. Kentucky*, 559 U.S. 356, 373 (2010). And the Supreme Court of the United States in *Frye*, 566 U.S. 134 at 143 described the role of plea bargaining in our criminal justice system as follows:

> Ninety-seven percent of federal convictions and ninety-four percent of state convictions are the result of guilty pleas. . . . The reality is that plea bargains have become so central to the administration of the criminal justice system that defense counsel have responsibilities in the plea bargain process, responsibilities that must be met to render the

7

adequate assistance of counsel that the Sixth Amendment requires in the criminal process at critical stages. Because ours "is for the most part a system of pleas, not a system of trials," . . . it is insufficient simply to point to the guarantee of a fair trial as a backstop that inoculates any errors in the pretrial process. "To a large extent . . . horse trading [between prosecutor and defense counsel] determines who goes to jail and for how long. That is what plea bargaining is. It is not some adjunct to the criminal justice system; it is the criminal justice system." . . . "[Defendants] who do take their case to trial and lose receive longer sentences than even Congress or the prosecutor might think appropriate, because the longer sentences exist on the books largely for bargaining purposes. This often results in individuals who accept a plea bargain receiving shorter sentences than other individuals who are less morally culpable but take a chance and go to trial" . . . . In today's criminal justice system, therefore, the negotiation of a plea bargain, rather than the unfolding of a trial, is almost always the critical point for a defendant.

(internal citations omitted). These principles and insights guide our analysis here.

## Discussion

Since it is undisputed that Parsons's counsel's advice constituted the ineffective assistance of counsel, the question before us is whether Parsons demonstrated a reasonable probability that but for his counsel's constitutionally ineffective assistance, he would not have pleaded guilty to the assault charge and would have insisted on going to trial. We find that Parsons met his burden of proof under this standard, and that the motion court clearly erred by finding that he was not prejudiced in this case.

*1. Counsel's ineffective assistance rendered Parsons's guilty pleas unknowing and involuntary.*

A guilty plea must be a voluntary expression of the defendant's choice, and a knowing and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences. *State v. Roll*, 942 S.W.2d 370, 375 (Mo.banc 1997) (citing *Brady v. United States*, 397 U.S. 742, 748 (1970)). Following a guilty plea, the ineffectiveness inquiry is limited to whether counsel's actions impinged on the movant's ability to enter a knowing and voluntary plea. *Dobbins v. State*, 187 S.W.3d 865, 866 (Mo.banc 2006) (citing *Roll*, 942 S.W.2d at 375 (Mo.banc 1997)). Mistaken beliefs about sentencing affect a defendant's ability to knowingly enter a guilty

8

plea if the mistake is reasonable and the mistake is based upon a positive representation upon which the movant is entitled to rely. *Id.* at 866-867 (citing *Dorsey v. State*, 115 S.W.3d 842, 845 (Mo.banc 2003)).

It is no surprise that the motion court has recognized and the State has conceded that Parsons's counsel rendered ineffective assistance by missing the double jeopardy issue and advising Parsons to plead guilty to both charges. Likewise, the State, at least, did not contest Parsons's assertion that counsel affirmatively misled him and induced him to enter guilty pleas that were unknowing and involuntary.

2. *The record supports Parsons's argument that it was reasonably probable he would have gone to trial absent counsel's error.*

Although it points toward prejudice that Parsons was caused by his attorney's mistake to enter unknowing and involuntary guilty pleas, that alone does not satisfy the test set forth in *Lee* that Parsons show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Lee*, 137 S.Ct. at 1965.

Nevertheless, we find Parsons met that standard as well. First, Parsons testified that had he been given accurate advice, he would have gone to trial. Second, we find it significant that Parsons *rejected* the State's offer of 11 years on each count even when he thought—incorrectly— that he faced up to 30 years if he proceeded to trial. This shows that if Parsons had properly faced only one possible conviction and a maximum sentence of 15 years, there is at least a reasonable chance that he would have insisted on a trial. Finally, Parsons testified that while he entered blind pleas of guilty, those came only after he concluded *based on counsel's advice* that he had no other realistic option. In light of these facts, we find Parsons has demonstrated a reasonable probability that, wisely or not, he would have insisted on a trial in the absence of counsel's error.

9

3. *The motion court's implicit rationale that Parsons would not have gone to trial absent counsel's error because he was unlikely to obtain a better result by doing so departs from the Supreme Court's holding in* Lee *and is supported only by speculation.*

Contrary to the motion court's apparent presumption, Parsons did not have to show that he would have been better off going to trial than pleading guilty. *See Lee*, 137 S.Ct. at 1965 ("[W]e do not ask whether, had [the movant] gone to trial, the result of that trial 'would have been different' than the result of the plea . . . ."). Parsons's sole burden to prove prejudice in this case was, instead, to establish a reasonable probability that counsel's error caused him to plead guilty where otherwise he would have insisted on a trial. *Id.*

Obviously, defendants weigh their prospects at trial in deciding whether to plead guilty, but "[w]hen [the respective consequences of a conviction after trial and by plea] are, from the defendant's perspective, similarly dire, even the *smallest chance* of success at trial may look attractive." *Id.* at 1966 (citing *Hill*, 474 U.S. at 59) (emphasis added). So where, as here, we are "asking what an *individual* defendant would have done, the possibility of even a *highly improbable* result may be pertinent to the extent it would have affected his decisionmaking." *Id.* at 1967 (emphasis added). Indeed, the Supreme Court has recognized that even "a defendant with *no realistic defense* to a charge carrying a 20–year sentence may nevertheless choose trial, if the prosecution's plea offer is 18 years." *Id.* at 1966-67 (emphasis added).

Here, Parsons rejected a *more favorable* offer. Based on this example, and for all the reasons stated above, we find Parsons has demonstrated a reasonable probability that with the threat of unlawful double-sentencing wiped out, *he* would have decided he was better off risking

10

a trial, even if another defendant would not have reached the same conclusion.[8] The motion court clearly erred by finding that Parsons was not prejudiced by counsel's ineffective assistance.

We are mindful and respectful of the motion court's important role as the fact-finder on a Rule 24.035 motion. However, we find that the motion court's rationale for denying Parsons's motion is entirely speculative that there was no reasonable likelihood he would have insisted on a trial in the absence of counsel's error because he was unlikely to obtain a better result at trial than the 12-year sentence he received for pleading guilty to the assault charge.

Indeed, the motion court had no firm basis in the record to conclude that with the threat of conviction of both included offenses removed from the equation, the State would have made a plea offer acceptable to Parsons, or that even if he rejected the State's offer, he would still have been inclined to enter a blind plea rather than proceed to trial. It is unknowable what impact the fact that there were two possible felony convictions and two 15-year maximum sentences in play had on the State's decision to offer 11 years on each charge. So frankly, it is impossible to know whether the State would have made *any* plea offer in the absence of counsel's error, much less whether Parsons would have accepted it. But as discussed above, he has already shown that, even in an erroneously-diminished bargaining position, he was not willing to accept an offer of 11 years, and the record supports his assertion that he entered his blind guilty pleas because he considered

---

[8] In *Lee*, the Court also required that the movant demonstrate that a decision to forgo pleading guilty and go to trial would have been *rational* under the circumstances. *Id.* at 1968-69 (citing *Padilla*, 559 U.S. at 372). There is no explicit argument here that, even if Parsons showed he would have gone to trial absent counsel's error, it would have been *irrational* under the circumstances for him to do so. Nevertheless, to the extent the issue is raised on this appeal, we would conclude here—like the *Lee* Court on the facts in that case—that though perhaps "[n]ot everyone" would make the same choice in Parsons's position, "[w]e cannot agree that it would be irrational" for a defendant in that position to forgo pleading guilty in favor of trial. *Id.*

11

himself boxed in by counsel's mistake that exposed him to the risk of being sentenced to 30 years if he took his case to trial.

Furthermore, though the State clearly had a strong case for trial on this record, it is not a certainty that Parsons would even have been *convicted* by a jury of the *greater* of the two offenses charged here—importantly, the one to which Parsons's blind plea of guilty was never set aside: second-degree assault of a law enforcement officer. The assault charge required the State to prove that Parsons operated a motor vehicle while intoxicated *and* "when so operating, *act[ed] with criminal negligence* to cause physical injury to a law enforcement officer . . . ." § 565.082.1(4) (emphasis added). Section 562.016.5 defines the phrase "acts with criminal negligence" as follows: "A person acts with criminal negligence or is criminally negligent when he fails to be aware of a substantial and unjustifiable risk that circumstances exist or a result will follow, and such failure constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation."

On the other hand, the class B felony DWI charge under § 577.010.2(6)(a) burdened the State merely with proving that Parsons drove under the influence and was a habitual offender. And the information in this case recites four prior guilty pleas by Parsons to driving while intoxicated that, if proved, would appear to readily demonstrate his habitual offender status under § 577.001(11).

So while Parsons was charged with two serious felonies, both with wide and significant punishment ranges, the State's burden at trial to prove those crimes would not have been the same—it would have been more onerous to prove the greater offense. Though the State would have had to prove Parsons drove while intoxicated for either offense, the *mens rea* element of the assault charge—that Parsons acted with "criminal negligence"—inserted matters of proof that

12

increased the State's burden and at the same time raised questions that may have been useful to the defense at trial.

### 4. Counsel's erroneous advice profoundly damaged Parsons's plea bargaining position.

Counsel's mistake skewed the entire plea bargain process in this case, altering the bargaining position of all involved. Most critically, counsel's error devastated Parsons's bargaining position by squandering any leverage he might have had to elicit an acceptable plea offer. And conversely, the error here unfairly enhanced the State's bargaining position by providing the State with the unearned, unlawful leverage of the threat of two convictions where only one was constitutionally permitted, and an attendant improper doubling of Parsons's potential time in prison. With such threats in its arsenal, the State had one more bite at the apple and one-hundred percent more bargaining room on the higher end of sentencing than it should have. The State's final offer of 11 years on each charge illustrates how strong it considered its position.

### 5. The motion court's rationale that setting aside Parsons's guilty plea to the DWI charge remedied any prejudice that may have occurred is misplaced.

Parsons's guilty plea to the assault charge failed the most basic test for determining whether a plea is knowing and voluntary: A guilty plea must be a voluntary expression of the defendant's choice, and a knowing and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences. *Roll*, 942 S.W.2d at 375. In fact, the motion court acknowledged that Parsons's counsel was "deficient in failing to object to the imposition of sentence on both charges." But though the plea court appropriately set aside Parsons's DWI guilty plea, we are not persuaded—as the motion court was—that setting aside the DWI guilty plea somehow rendered knowing and voluntary Parsons's remaining guilty plea to the assault charge and cured any prejudice to him from counsel's error. Rather, we believe Parsons's assault-charge guilty plea retained the fundamental defect of being entered unknowingly and involuntarily

13

because not only counsel, but also the State and the plea court utterly misrepresented to Parsons the effect on his constitutional rights of pleading guilty to included offenses. And applying the test for prejudice from *Lee*, we fail to see how the prejudice to Parsons was in any way cured here when it could readily have been cured by setting aside both guilty pleas and allowing Parsons and the State to reengage in plea negotiations as to the assault charge alone—or, if that failed, to proceed to trial with only one possible conviction and sentence hanging over Parsons's head.

## Conclusion

After reviewing the entire record, we are left with the definite and firm impression that a mistake has been made. The judgment of the motion court is reversed and the cause is remanded for further proceedings consistent with this opinion.

_____
James M. Dowd, Judge

Sherri B. Sullivan, P.J., and
Lawrence E. Mooney, J., concur.

14