

# In the Missouri Court of Appeals
## Eastern District

### DIVISION FOUR

| | |
|---|---|
| | ) No. ED110649 |
| | ) |
| IN THE INTEREST OF: K.M.F. | ) Appeal from the Circuit Court of |
| | ) St. Louis County |
| | ) |
| | ) Honorable Jason D. Dodson |
| | ) |
| | ) |
| | ) Filed: May 23, 2023 |

**Introduction**

K.M.F. ("Appellant") appeals the judgment of the Juvenile Division of the Circuit Court of St. Louis County granting the Juvenile Officer's motion to dismiss its juvenile petition and certify Appellant for prosecution as an adult under general law. Appellant raises one point on appeal, arguing the criminal ineffectiveness of counsel standard should apply to juvenile certification hearings and his counsel failed to meet this standard. Because Appellant does not demonstrate a reasonable probability that, but for his counsel's alleged errors, the result of the proceeding would have been different, we deny Point I.

We affirm.

**Factual and Procedural History**

Appellant was born on February 6, 2004. On November 11, 2021, the Juvenile Officer of St. Louis County filed a petition in the Juvenile Division of the Circuit Court of St. Louis County

alleging on November 5, 2021, Appellant committed, if he were an adult, first degree tampering, a class D felony under section 569.080.[1] The petition further alleged on November 10, 2021, Appellant committed, if he were an adult: first degree murder, a class A felony under section 565.020.1, RSMo. 2016; unlawful use of a weapon, a class A felony under section 571.030; and resisting arrest, a class E felony under section 575.150.

On November 12, 2021, the Juvenile Officer moved to dismiss the petition to allow prosecution of Appellant under the general law. On November 15, 2021, the Juvenile Officer filed a report recommending Appellant's detention because he is a danger to the community or its property. The report alleged Appellant "knowingly possessed and/or unlawfully operated a motor vehicle" without the owner's consent, and, after deliberation, shot and killed an acquaintance of his. The report stated the victim's mother "expressed concerns of safety for herself and her family" and "it is unlikely that a district will allow [Appellant] onto school property due to the safety concerns for other students." The report described a history of Appellant absconding from school, court-ordered placements, residential placements, and his mother's custody. The report alleged on April 18, 2021, Appellant attacked staff and others and escaped a Division of Youth Services residential program.

The juvenile court held a certification hearing on March 16, 2022. Appellant was eighteen.[2] Deputy Juvenile Officer Deborah Hausler testified in favor of certification. Hausler was assigned to Appellant from September 2017 through April 2019 and re-assigned to him on November 12, 2021. Hausler based her testimony on "previous court reports, previous school records, psychological reports," detention behavior logs, and information obtained from Appellant and his mother. On direct examination, Hausler testified Appellant's actions on

---

[1] All statutory citations are to RSMo Cum. Supp. 2021, unless otherwise indicated.
[2] Appellant turned nineteen on February 6, 2023.

November 10, 2021, constituted "an extremely serious offense" involving viciousness, force, and violence against a person resulting in injury and death. Hausler testified, according to the police report, Appellant "was in a stolen vehicle and pulled up and to the sidewalk and pointed a firearm out of the window and shot the victim that was standing on the sidewalk." Hausler testified Appellant knew the victim because he was the boyfriend of Appellant's aunt, and Appellant killed him because he was "in possession of another weapon that [Appellant] wanted to have." Hausler testified the killing took place near an elementary school, and police "located several weapons in one of the back bedrooms" of Appellant's home. Hausler stated Appellant has an "above average" referral history, including twenty-nine referrals in St. Louis County and seven referrals in St. Louis City.[3] Hausler testified several of these referrals were "screened insufficient," but there were "several that were handled formally," including "[p]ossession of marijuana, tampering, violation of court orders on multiple occasions, possession of a firearm and failure to appear." Hausler testified Appellant "presents as very sophisticated."

Hausler testified she considered all available programs and facilities in the juvenile system and determined none were suitable for Appellant. Because of Appellant's age, Hausler testified the Division of Youth Services was not a proper placement and there were "no current services under the juvenile office" available for an eighteen-year-old. Hausler testified placement with a private residential treatment facility was not appropriate because he absconded in the past, and "referrals were made to Marygrove and Great Circle; however, they rejected his referrals and would not accept him into their program." On cross examination by Appellant's counsel, Hausler

---

[3] Both Appellant and the State, citing the same page of Hausler's direct examination, state the reverse: Appellant had twenty-nine referrals in St. Louis City and seven referrals in St. Louis County. Hausler testified "there were seven referrals to the 22nd juvenile office" and in "the 21st Circuit there are 29 referrals that have been received." Hausler's testimony is consistent with the Juvenile Officer's report, which lists twenty-seven referrals in the 21st Circuit and seven referrals in the 22nd Circuit. In its judgment, the juvenile court found Appellant "has generated 28 referrals to the St. Louis County Juvenile Office and 7 to the 22nd Circuit's Juvenile Office." Missouri's 21st Judicial Circuit sits in St. Louis County and the 22nd Judicial Circuit sits in St. Louis City.

3

testified Appellant has attention-deficit/hyperactivity disorder ("ADHD"), a learning disability for which he was prescribed medication, and an individualized education plan at school. Hausler agreed Appellant has characteristics consistent with people with ADHD, including, as described by Appellant's counsel, impulsivity and "compulsory behavior, like they do things on impulse without giving it forethought or second thought . . . . "

On May 18, 2022, the juvenile court dismissed the Juvenile Officer's petition and certified Appellant for prosecution as an adult under general law. The juvenile court found the Juvenile Officer's allegations "are the most serious in nature and clearly indicate a disregard for human life and community safety," and involved "viciousness, force and violence," because Appellant used a handgun to "shoot and kill the victim who was standing in front of an elementary school." The juvenile court stated the killing and use of a weapon "carry great weight in the Court's decision," and the alleged offenses "are part of a repetitive pattern of offenses" indicating Appellant "may be beyond rehabilitation under the juvenile code."

The juvenile court found Appellant has twenty-eight referrals in St. Louis County and seven more in St. Louis City, and he was "initially placed under this Court's supervision for trespassing, resisting arrest, stealing a firearm/explosive weapon, failure to appear, truancy and being habitually absent from home." The juvenile court found Appellant "has a history of assaultive behavior, lack of consideration for the property of others, and a complete disregard for compliance with court orders," and his latest conduct demonstrated "the ultimate escalation in the severity and violence" of his behavior.

The juvenile court described Appellant's "extensive history" in the juvenile system. On May 23, 2018, Appellant was placed under the juvenile court's jurisdiction. Appellant was placed in his mother's custody, subject to the juvenile court's intensive supervision program and

4

electronic monitoring, but the juvenile court "[a]lmost immediately" received notices Appellant was away from home without the Juvenile Officer's permission. On June 4, 2018, Appellant's mother placed him in an inpatient substance abuse facility, but Appellant removed his ankle monitor and fled three days later. Appellant "remained on the run until he was admitted to the St. Louis County Juvenile Detention Center on June 14, 2018 for allegedly riding in a stolen vehicle and fleeing from the police." Appellant was returned to a drug treatment facility, but he absconded.

The juvenile court found, despite "various therapeutic and supportive services," Appellant's "behavior did not improve." Following a hearing on November 28, 2018, Appellant fled and "remained on the run until December 5, 2018, when he was apprehended by St. Louis County police as a possible suspect in a robbery." Appellant attempted to escape the arresting officers. On March 8, 2019, Appellant was released from detention to another facility. He absconded until April 8, 2019, when police investigating a burglary arrested Appellant, who matched a suspect's description. On April 22, 2019, the juvenile court committed Appellant to the Division of Youth Services. He absconded again.

The juvenile court found the evidence established Appellant is "an emotionally sophisticated and physically mature 18-year-old." The juvenile court found no placement, program, or facility available under the juvenile code "would provide sufficient protection to the community." The juvenile court found jurisdiction and supervision by a deputy juvenile officer inappropriate because of "the (most) serious nature of the pending allegations," Appellant's "potential danger to the community," and his "history that demonstrates a complete disregard for court orders and services." Parentheses original. Due to Appellant's age, the juvenile court found "there are no services or resources available to him that provide any meaningful opportunity for

5

rehabilitation." The juvenile court found it "clear that protection of the community weighs in favor of dismissal and transfer to the court of general jurisdiction." Given "the seriousness and particularly the violent and vicious nature of the offense," Appellant's age, "the limited time for rehabilitating" him, and no evidence a facility could guarantee his confinement, the juvenile court found "there are no reasonable prospects for rehabilitation under the Juvenile Code," and he is not "a proper subject to be dealt with under the provisions of the Juvenile Code." The juvenile court found it "considered the available evidence as to racial disparity with certification, per section 211.071.6, RSMo."

The juvenile court dismissed the Juvenile Officer's petition, ordered Appellant "transferred to the court of general jurisdiction for the purpose of such prosecution," ordered Appellant "released and discharged from the jurisdiction of the Juvenile Court," and ordered a "copy of the Petition and a copy of this Order be sent to the Prosecuting Attorney of St. Louis County, Missouri."

This appeal follows.

**Standard of Review**

A juvenile has the right to counsel at a certification hearing. *J.N.W. v. Juv. Officer*, 643 S.W.3d 618, 634 (Mo. App. W.D. 2022), *transfer denied* (Mar. 29, 2022), *transfer denied* (May 17, 2022) (quoting *State v. Nathan*, 404 S.W.3d 253, 260 (Mo. banc 2013)). This right "would be hollow were there no accompanying requirement counsel be effective." *Id.* (quoting *D.C.M. v. Pemiscot Cnty. Juv. Off.*, 578 S.W.3d 776, 782 (Mo. banc 2019)). A juvenile may raise a claim of ineffective assistance of counsel on direct appeal. *Id.* at 634 (citing *D.C.M.*, 578 S.W.3d at 782). What procedure should be followed when reviewing ineffective assistance of counsel

6

claims in juvenile cases is a question of law we review *de novo*. *D.C.M.*, 578 S.W.3d at 782 (citing *Grado v. State*, 559 S.W.3d 888, 895 (Mo. banc 2018)).

**Discussion**

Appellant argues his counsel was ineffective at his juvenile certification hearing, violating his statutory and due process rights to counsel. *Interest of P.J.T.*, 643 S.W.3d 527, 533 (Mo. App. S.D. 2021), *reh'g denied* (Dec. 1, 2021), *transfer denied* (May 17, 2022) (citing *D.C.M.*, 578 S.W.3d at 782); § 211.211.1; Rule 115.01(a).[4] Appellant argues the effectiveness of his counsel should be assessed under the *Strickland v. Washington* standard applied to criminal proceedings. 466 U.S. 668, 687 (1984). This standard requires Appellant demonstrate failure by his counsel to exercise the level of skill and diligence a reasonably competent counsel would have exercised in a similar situation and prejudice resulting from that failure. *Parsons v. State*, 574 S.W.3d 810, 816 (Mo. App. E.D. 2019) (citing *Johnson v. State*, 406 S.W.3d 892, 898–99 (Mo. banc 2013)). To establish prejudice, Appellant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Appellant argues his counsel "was ineffective in failing to obtain and present evidence showing [Appellant's] lack of sophistication and amiability to treatment." Appellant lists substance abuse, his involvement with the juvenile system beginning when he was thirteen years old, his father's incarceration, and his cognitive disability as "mitigating" circumstances. Appellant argues his counsel knew about his learning disability, but "did not appear to make any effort to obtain or present evidence" on this issue, and "the only mention of [Appellant's] learning disability was a short part of counsel's cross-examination" of Hausler.

---

[4] All Rule citations are to the Missouri Supreme Court Rules (2022), unless otherwise indicated.

Appellant cites *Wiggins v. Smith*, which held an attorney's investigation fell short of professional standards where, among other problems, "counsel abandoned their investigation of petitioner's background after having acquired only rudimentary knowledge of his history from a narrow set of sources." 539 U.S. 510, 524 (2003). Appellant also cites *Porter v. McCollum*, which held an attorney's representation was unreasonable where "counsel did not even take the first step of interviewing witnesses or requesting records." 558 U.S. 30, 39 (2009). Appellant argues an investigation of his learning disability was important because "impaired intellectual functioning is inherently mitigating." *Tennard v. Dretke*, 542 U.S. 274, 287 (2004) (citing *Atkins v. Virginia*, 536 U.S. 304, 316 (2002)). Appellant argues evidence of his traumatic childhood is relevant because "defendants who commit criminal acts that are attributable to a disadvantaged background" may be less culpable. *Porter*, 558 U.S. at 41 (quoting *Penry v. Lynaugh*, 492 U.S. 302, 319 (1989)).

Appellant argues he was prejudiced because "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 40 (quoting *Strickland*, 466 U.S. at 694). Appellant argues, like in *Porter*, he was prejudiced because the judge and jury heard about the defendant's "turbulent relationship with [the victim], his crimes, and almost nothing else." *Id.* at 41. Appellant argues the juvenile court heard about his alleged violent offense, the firearms found at his house, his prior misconduct, and "the times [Appellant] ran away from his placements." "But other than a brief mention," Appellant argues, "the hearing court did not hear about [Appellant's] learning disability or mental illness. The hearing court heard hardly any mitigating evidence."

The State agrees we should apply *Strickland*, but contends Appellant is not entitled to relief because "counsel's performance was not deficient in any way and, even if deficient, no

prejudice resulted therefrom as the [statutory factors] weigh heavily in favor of certification." The State cites our presumption counsel are adequate and their strategies are sound. *Anderson v. State*, 66 S.W.3d 770, 775 (Mo. App. W.D. 2002) (citing *State v. Simmons*, 955 S.W.2d 729, 746 (Mo. banc 1997), *as modified* (Nov. 25, 1997)). At the certification hearing, the State notes Appellant's counsel made "the juvenile court aware of Appellant's cognitive limitations through her cross-examination of [Hausler]." The State argues Appellant's counsel addressed his learning disability competently and we must not use hindsight to assess counsel's trial strategy. *Strickland*, 466 U.S. at 689.

Even if Appellant's counsel was ineffective, the State insists Appellant was not prejudiced because there is not "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. As in *Strickland*, the State argues "the aggravating circumstances were so substantial that no substantial prejudice resulted" from counsel's allegedly deficient performance. *Id.* at 677. The State contends the ten factors of section 211.071.6 weigh heavily in favor of certification, despite any "mitigating" evidence that could have been introduced. The State underscores the violent nature of Appellant's alleged conduct and the repeated failures to rehabilitate Appellant. The State argues Appellant's "mitigating" evidence focuses on the sixth factor (assessing sophistication, maturity, and living environment), but courts emphasize the first three factors and "the serious nature of the crime is the dominant criterion among the ten factors." *Interest of T.D.S.*, 643 S.W.3d 510, 524 (Mo. App. E.D. 2021), *reh'g and/or transfer denied* (Dec. 6, 2021), *transfer denied* (May 17, 2022) (quoting *State v. Thomas*, 70 S.W.3d 496, 504 (Mo. App. E.D. 2002)). The State also notes the juvenile court need not give equal weight to each factor. *Id*. at 523 (citing *Thomas*, 70 S.W.3d at 504).

9

The standard applied to claims of ineffective assistance of counsel at a juvenile certification hearing is an "unresolved issue." *J.N.W.*, 643 S.W.3d at 635; *see also P.J.T.*, 643 S.W.3d at 533 (quoting *D.C.M.*, 578 S.W.3d at 784 n.11) ("Missouri law has not defined the standard to be applied when determining whether a juvenile's counsel was effective."). Either the meaningful hearing standard applied in termination of parental rights cases or the *Strickland* standard applied in adult criminal proceedings may be applicable. *Id.* In *J.N.W.*, the Western District declined to determine which standard applies because "[e]ven assuming the more demanding *Strickland* standard applies," the appellant could not establish ineffectiveness of counsel. *Id.* at 635–36.

We take the same course here. Even assuming, as both parties request, *Strickland* applies to claims of ineffectiveness of counsel at a juvenile certification hearing, Appellant has not established his counsel was ineffective because he has not demonstrated he was prejudiced. There is no reasonable probability, but for his counsel's alleged failure to introduce evidence of his ADHD, extensive history in the juvenile system, substance abuse, and his father's incarceration, the result of his certification hearing would have been different. *Strickland*, 466 U.S. at 694.

Appellant characterizes the evidence his counsel failed to present as "mitigating" evidence. Mitigating evidence is evidence, such as life history and cognitive development, which suggests a criminal defendant is less culpable for his actions. *See Baumruk v. State*, 364 S.W.3d 518, 536 (Mo. banc 2012*)*; *see also Taylor v. State*, 262 S.W.3d 231, 250 (Mo. banc 2008). But a certification hearing is not adjudicatory. *Interest of D.M.M.*, 658 S.W.3d 594, 599 (Mo. App. E.D. 2022) (citing *T.D.S.*, 643 S.W.3d at 520). Certification does not decide guilt, innocence, or culpability. *J.N.W.*, 643 S.W.3d at 637 n.15. A certification hearing decides under which system

10

the juvenile will receive due process of law. *T.D.S.*, 643 S.W.3d at 518. Mitigating evidence can, and should, be presented for Appellant when he is prosecuted as an adult under general law. *See Taylor*, 262 S.W.3d at 250. We will discuss Appellant's arguments regarding his lack of sophistication, amenability to treatment, substance abuse, family history, cognitive ability, and learning disability in the context of a certification hearing under section 211.071.

The procedure to certify a juvenile for trial as an adult is set out in section 211.071. *T.D.S.*, 643 S.W.3d at 518. This section provides a non-exhaustive list of ten factors to consider, including "the characteristics of the juvenile's offense; the juvenile's history, behavior, age, and sophistication; the program and facilities available to the juvenile court; whether the child could benefit from the programs available to the juvenile court; and racial disparity." *Id.*

The first three factors contain some of the most critical considerations. *Id.* at 527 (citing *State v. Seidel*, 764 S.W.2d 517, 519 (Mo. App. S.D. 1989)). The first factor assesses the seriousness of the offense and the need to protect the community and "dominates our inquiry." *Id.* at 525 (citing *Thomas*, 70 S.W.3d at 504). Appellant is accused of "the most heinous of crimes, homicide." *State v. Andrews*, 329 S.W.3d 369, 385 (Mo. banc 2010), *as modified on denial of reh'g* (Jan. 25, 2011) (Wolff, J., dissenting). Based on Hausler's testimony that Appellant shot his aunt's boyfriend from a stolen vehicle, near a school, over a dispute about a firearm, the juvenile court found the "offenses alleged are the most serious in nature and clearly indicate a disregard for human life and community safety," and "protection of the community weighs in favor of dismissal." § 211.071.6(1). For the second factor, assessing the presence of viciousness, force, and violence, the juvenile court found Appellant's alleged offenses "involve viciousness, force and violence and involve the use of a lethal weapon, a handgun, which was used to shoot and kill the victim who was standing in front of an elementary school . . . . "

11

§ 211.071.6(2). For the third factor, emphasizing crimes against the person (especially those causing injury) over crimes against property, the juvenile court found "murder and unlawful use of a weapon allegations are offenses against a person," and "carry great weight in the Court's decision." § 211.071.6(3).

For the fourth and fifth factors, assessing the juvenile's record and history, the juvenile court found Appellant's alleged offenses "are part of a repetitive pattern of offenses" indicating he "may be beyond rehabilitation under the juvenile code." § 211.071.6(4). The juvenile court noted Appellant's extensive referral history in the juvenile system and his "history of assaultive behavior, lack of consideration for the property of others, and a complete disregard for compliance with court orders." The juvenile court found Appellant "has an extensive history with this Court," and consistently escaped his placements. § 211.071.6(5).

For the sixth and seventh factors, assessing the "sophistication and maturity of the child as determined by consideration of his or her home and environmental situation, emotional condition and pattern of living," and the juvenile's age, the juvenile court found the "evidence establishes that [Appellant] is an emotionally sophisticated and physically mature 18-year-old." § 211.071.6(6)–(7). For the eighth and ninth factors, assessing the programs and facilities available and whether the juvenile "can benefit from the treatment or rehabilitative programs available to the juvenile court," the juvenile court found "[n]o placement, program or facility available to the Court for [Appellant's] treatment under the juvenile code would provide sufficient protection to the community." The juvenile court cited the "(most) serious nature of the pending allegations," Appellant's potential danger to the community, and "his history that demonstrates a complete disregard for court orders and services." Parentheses original. The juvenile court found "due to [Appellant's] age, there are no services or resources available to him

that provide any meaningful opportunity for rehabilitation." § 211.071.6(8)–(9). For the tenth factor, instructing courts to consider "[r]acial disparity in certification," the juvenile court found it "considered the available evidence as to racial disparity with certification," and concluded Appellant "is not a proper subject to be dealt with under the provisions of the Juvenile Code." § 211.071.6(10).

The juvenile court therefore found each of the ten factors favor certification. Even if Appellant's counsel introduced evidence of a sympathetic background, Appellant has not shown his counsel was ineffective under *Strickland* because he has not demonstrated "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Anderson*, 66 S.W.3d at 775 (quoting *Simmons*, 955 S.W.2d at 746). Although the "criteria listed in section 211.071.6 are not exclusive and the juvenile court need not give equal weight to each one," the "first three factors contain some of the most critical considerations in certification" and "the seriousness of the offense dominates our inquiry." *T.D.S.*, 643 S.W.3d at 523–24, 27 (citing *Thomas*, 70 S.W.3d at 504). None of the first three factors consider the juvenile's background. § 211.071.6(1)–(3). Not only did the juvenile court find each of the first three factors favor certification, it found every factor does.

Despite Appellant's comparison, his case is remarkably different than *Porter*, in which the U.S. Supreme Court found a defendant's trial counsel was ineffective for failing to introduce mitigating evidence. 558 U.S. at 41. *Porter* did not involve the statutory factors of section 211.071.6 and the Court found "[t]his is not a case in which the new evidence 'would barely have altered the sentencing profile presented to the sentencing judge.'" *Id.* (quoting *Strickland*, 466 U.S. at 700). The defendant in *Porter* listed several mitigating factors which could have made a difference, including childhood physical abuse, a brain abnormality, and his "heroic

military service in two of the most critical—and horrific—battles of the Korean War." 558 U.S. at 41. The "mitigating" factors raised by Appellant are significantly less probative than those presented in *Porter. See State v. Roll*, 942 S.W.2d 370, 374 (Mo. banc 1997) (citing *State v. Hunter*, 840 S.W.2d 850, 868 (Mo. banc 1992), *cert. denied*, 509 U.S. 926 (1993)) ("Drug abuse may or may not be considered a mitigating circumstance, depending on the facts of the case.").

We are also unpersuaded by Appellant's comparison to *Wiggins*, in which the U.S. Supreme Court held a "reasonably competent attorney would have realized" pursuing leads on mitigating factors was necessary, "particularly given the apparent absence of any aggravating factors in petitioner's background." 539 U.S. at 525. Like *Porter*, *Wiggins* did not involve the statutory factors guiding the juvenile court's decision in this case. *Id.* The *Wiggins* Court clarified its decision is "distinguishable from our precedents," such as *Strickland,* "in which we have found limited investigations into mitigating evidence to be reasonable." *Id.* (citing *Strickland*, 466 U.S. at 699). In *Strickland*, the Court held unintroduced evidence "that numerous people who knew respondent thought he was generally a good person and that a psychiatrist and a psychologist believed he was under considerable emotional stress that did not rise to the level of extreme disturbance" would not have made a meaningful difference in the defendant's defense, considering the aggravating circumstances of his crimes. 466 U.S. at 700.

Appellant's counsel raised his learning disability at the certification hearing and elicited testimony on cross-examination it could cause impulsive and compulsive behavior. Appellant argues his counsel should have presented more "mitigating" evidence to the juvenile court, but Appellant does not demonstrate this would have resulted in a different outcome. As *Wiggins* explained, *Strickland* held counsel can "reasonably surmise" certain "character and

14

psychological evidence would be of little help." 539 U.S. at 525 (quoting *Strickland*, 466 U.S. at 700).

Because Appellant does not demonstrate a reasonable probability the outcome of his certification hearing would have been different, he does not demonstrate his counsel was ineffective.

Point I is denied.

## Conclusion

For the reasons stated above, we affirm.

_____
Philip M. Hess, Judge

Kelly C. Broniec, P.J. and
James M. Dowd, J. concur.

15